UNDERWOOD TYPEWRITER CO. v. FOX TYPEWRITER CO.

FOX TYPEWRITER CO. v. UNDERWOOD TYPEWRITER CO.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1915.)

Nos. 2454, 2455.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT.
      The Gathright patents, No. 436,916, for a tabulating mechanism for typewriters, and No. 452,268, for improvements thereon, held valid, and claims 4 and 6 of the former held infringed, and the latter not infringed.

2. PATENTS ☞318—INFRINGEMENT—ACCOUNTING FOR PROFITS.
      An infringer cannot set off against profits made by the sale of an infringing article a loss incurred in the sale of another article by giving away as a part of it another infringing device to stimulate sales.

      [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ☞318.]

3. PATENTS ☞322—INFRINGEMENT—ACCOUNTING FOR PROFITS—PATENT FOR IMPROVEMENT.
      The Gathright patents, Nos. 436,916 and 452,268, are not for tabulating typewriters, but for an independent tabulating mechanism adapted to be attached to the usual form of typewriter by the exercise of ordinary mechanical skill; and in a suit against an infringer, which made and sold at a profit typewriters both with and without the infringing feature, showing that the marketability of the infringing machines was not entirely due to that feature, in the absence of proof of its bad faith, or of such conduct as rendered the separation of profits impossible, the burden

rested on complainant to prove what part of the entire profits from sales of the infringing machines was due to the tabulators.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 590–595; Dec. Dig. ☜322.

Accounting by infringer of patent for profits, see notes to Brickell v. City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

Appeals from the District Court of the United States for the Southern Division of the Western District of Michigan; Knappen and Sessions, Judges.

Suit in equity by the Underwood Typewriter Company against the Fox Typewriter Company. Decree for complainant, from which defendant appeals; and complainant appeals from final decree awarding only nominal damages. Affirmed on defendant's appeal, and reversed and remanded on complainant's appeal, to permit the introduction of further proof.

For opinion below, see 181 Fed. 530.

A. von Briesen, of New York City, for Underwood Typewriter Co.
F. L. Chappell, of Kalamazoo, Mich., for Fox Typewriter Co.

Before WARRINGTON, Circuit Judge, and SATER and SANFORD, District Judges.

SATER, District Judge. [1] In the first of these cases the plaintiff appeals on account of the alleged insufficiency of the recovery decreed it below on an accounting for profits and damages; in the second the appellant (defendant below) appeals from the same decree, and also from that adjudging it an infringer. The primary question is: Did the defendant infringe claims 4 and 6 of patent No. 436,916, granted September 23, 1890, and claims 6 and 8 of patent No. 452,268, granted May 12, 1891, both of which were issued to Gathright and are owned by the plaintiff.

The object of Gathright's first invention is to provide means for accurately and automatically locating with a typewriter in vertical alignment one or more columns of figures, as is required in the preparation of bills, invoices, statements of account, and the like, and for mechanically skipping any intervening spaces which it may be desired to leave blank. To accomplish his purpose he devised a tabulating mechanism embracing a supplemental spacing key and the use of one or more stops entirely distinct from the usual spacing mechanism of a typewriter and adapted to engage with the carriage on which the paper to receive the writing is mounted. The sole duty of the supplemental spacing key is to disengage the carriage rack from the usual detent of a typewriter and to hold such carriage rack disengaged until, traveling in its usual path, it has passed over the predetermined space which it is desirable to skip, to a stop whose location is adjustable and has been fixed at the end of such space, and also to remove such stop by the act of releasing the key, thus permitting the carriage to resume service at the usual letter spaces. When the supplemental key is pressed downward, it releases the carriage detent and places an adjusted stop in the path of the carriage to arrest it at the predetermined point. When the supplemental

key is permitted to rise, it withdraws the adjusted stop from the path of the carriage, leaving it free to resume its usual work. His second patent is for an improvement of the skipping device covered by his first.

The validity of his patents was first involved in Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict, 151 Fed. 585, 81 C. C. A. 129 (C. C. A. 2) in which Judge Coxe, speaking for the court, sustained them both. In the present case, in an exhaustive and well-considered opinion, reported in 181 Fed. 530, Judge Knappen, then sitting as a District Judge, upheld the patents and found infringement as to the fourth and sixth claims of the first and noninfringement as to those of the second. His decision was followed by Judge Hazel in Underwood Typewriter Co. v. Fox Typewriter Co., Limited, et al. (C. C.) 181 Fed. 541. The patents were again sustained by Judge Ray in Underwood Typewriter Co. v. Elliott-Fisher Co. (C. C.) 165 Fed. 927. The decision of Judge Holt, rendered in the contempt proceedings arising out of Underwood Typewriter Co. v. Elliott-Fisher Co. (C. C.) and found in 156 Fed. 588, and the unreported opinion handed down by Judge Coxe in granting a temporary injunction in Underwood Typewriter Co. v. Graves Typewriter Co. and Fox Typewriter Co., Limited, are both bottomed on the conclusions reached by the Appellate Court of the Second Circuit. The prior art is so fully discussed in the reported opinions of Judges Knappen, Coxe, and Ray, and in American Writing Machine Co. v. Wagner Typewriter Co., 151 Fed. 576, 81 C. C. A. 120, that a further review of it would be but a restatement of what has been well said. Our study of the question of infringement leaves us in entire accord with the views of Judge Knappen, and his opinion is therefore adopted as that of this court.

[2] Following the finding of infringement, a master was appointed to ascertain and report the number of infringing tabulating devices or attachments for typewriting machines made, used, leased, or sold by the defendant, the profits made by it from its infringements, and the damages suffered by the plaintiff on account of the same. The accounting side of the case is here solely on the evidence offered by the plaintiff in chief, as the defendant elected to offer none. At the instance of the master, the defendant submitted a statement of its business transactions for the infringing period, which showed the cost of 530 ten-stop tabulators, the receipts arising from their sale, and a net profit on them of $1,750.36. The allowance of this sum to the plaintiff forms the basis of the defendant's appeal from the decree on the accounting.

These tabulators were listed at $20 each, and were sold separately, excepting that in some instances special prices appear to have been given to purchasers. The plaintiff's tabulator has a single stop for its single key, which, as manufactured by the defendant, costs 89 cents. A ten-stop tabulator made according to the Gathright invention would therefore cost $8.90. The defendant's ten-stop tabulator accomplishes the ten stops by means of three stop bars, whose cost is but $5.17. To advertise and create a demand for its ten-stop tabulators, it claims to have sold its machines having a single stop tabulator without adding anything to their price on account of the presence of that improvement; but the large sales of such machines failed to create the desired demand. It asserts that a loss largely in excess of the above-named profits con-

sequently resulted from what was in effect the g<sup>:</sup>ving away of the tabulators attached to machines. It therefore asks that the saving of $3.73 in the production of each of its ten-stop tabulators be set off against the loss sustained by its donation of those of the other kind. Its position on the facts claimed is untenable. The ten-stop tabulators were an infringing device. The profits made on sales of them cannot be retained, because in other transactions involving the sale of another article it incurred a loss by giving away another infringing device to stimulate the sale of such other article. Canda Bros. v. Michigan Malleable Iron Co., 152 Fed. 178, 180, 81 C. C. A. 420 (C. C. A. 6).

[3] The statement above mentioned, along with others submitted by defendant, gave a list of the infringing machines sold by it, the amount received for each, the cost of 12,744 typewriters sold by it within the infringing period, of which number but 4,754 embodied Gathright's invention, the number of typewriters of both kinds made within such period, viz., 13,429, and the total number of single-stop tabulators or infringing machines that were made and sold, including those whose sale was effected after the expiration of the patent, which total number was 5,606. The statements did not show the profits, if any, on tabulators, as distinguished from the typewriter proper, or apportion the profits attributable to the patented and the unpatented features respectively. The plaintiff also offered evidence tending to show that the defendant could not have marketed its machines at a profit but for the presence of Gathright's device, but this evidence cannot be accepted as controlling for the reason that it is sufficiently shown that noninfringing machines were sold at a profit and that there had long been and was still an active demand for typewriters without tabulators, such, for instance, as defendant's, the Oliver, the Monarch, the Royal, and the Remington $100 machine. All of these machines were still extensively manufactured and freely sold on the market, but, with the exception of the Remington, at a price from $20 to $35 less than those having tabulators.

As determined by the master, the cost of manufacturing and selling defendant's machines varied in different years from $53.69 to $62.45, the profit on each machine for the month of June, 1906, being 62½ cents, for the year succeeding that month $11.85, and for the next following year $5.70. He rightfully concluded that the entire value of defendant's infringing typewriter as a marketable article was not attributable to the tabulators. If the record did not necessarily warrant the inference that nontabulating typewriters were sold at a profit, it would not be presumed that their manufacture and sale would have been so long continued at a loss. The master further found that the tabulating attachment was a valuable feature and added much to the machine's salability, but that not all of the salability at a profit was due to the tabulator; that, the defendant having failed to prove that any other feature of its infringing typewriter than the plaintiff's tabulator had contributed to its profits therefrom, the burden of segregating the profits directly arising from the manufacture and sale of such tabulators was not on the plaintiff; and that the plaintiff, having shown no damages, but only the profits made by defendant which arose from the manufacture and sale of typewriters containing such tabulator, was

entitled to recover without diminution the whole of such profits which he fixed at $55,901.03. The defendant excepted on the ground that the facts found did not warrant a recovery. The trial court, accepting the master's finding of facts as correct, sustained the defendant's exceptions and restricted the recovery to nominal damages in the sum of $1.

The plaintiff's appeal is from the decree entered in accordance with such ruling. Its position, which is controverted by the defendant, is that Gathright patented, not an improvement on tabulators, but a machine specially adapted to tabulating work, and that consequently it is entitled to the entire profits made on the infringing machines; that the duty rested upon the defendant to show that some of its profits had been derived from the typewriter proper, manufactured and sold by it; that until the defendant performed that duty the plaintiff was not required to prove how much of the defendant's profits were due to the presence of the infringing device in such machines; and that the court erred in holding that under the circumstances of the case the burden of making proof of the profits traceable to the tabulating device rested on plaintiff.

The plaintiff's insistence that the patentee produced a typewriting machine, and that its visible typewriters are each "a tabulating machine embodying the invention of the patents in suit," is erroneous. His device is but an improvement on prior tabulators. It was the first commercially successful tabulator, and is such an improvement "that it may be said that the art, when considered from a practical and commercial point of view, began with him." Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict, supra. But his first patent shows, and the courts, whenever they have had occasion to express themselves on the subject, have uniformly and rightfully held, that his tabulating apparatus was designed to be and is wholly independent of the typewriter proper. By the exercise of ordinary mechanical skill it may be adapted to any kind of a self-feeding typewriter, without dispensing with any other spacing appliance or other element, or it may be removed therefrom, subsequent to its attachment, without interfering with the use of the machine for any of the usual purposes for which the machine may be employed. Gathright patented, not a typewriter, but a tabulator, which enables the operator to do about 10 per cent. more work in a given time and to do his work more conveniently, and which costs, as made by the defendant, less than $1. As the patented device was not of such importance that the entire market value of the defendant's machine was attributable to the addition of such patented improvement, the rule cannot be invoked which was applied against the infringer in the following and kindred cases: Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011; Philp v. Nock, 17 Wall. 460, 21 L. Ed. 679; Brennan & Co. v. Dowagiac Mfg. Co., 162 Fed. 472, 89 C. C. A. 392 (C. C. A. 6); Yesbera v. Hardesty Mfg. Co., 166 Fed. 120, 92 C. C. A. 46 (C. C. A. 6).

It having been developed by plaintiff's own evidence that the profits derived from the infringing machines were not all due to the tabulator, the burden devolved on it to prove what part of the entire profits arose from the use of its invention. Canda Bros. v. Mich. Malleable Iron Co.,

supra, page 181. If in fact such proof does not appear in the record, and if plaintiff has failed to show some exempting circumstance preventing the apportionment of profits, the same result must follow here as was attained in such cases as Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U. S. ——, 35 Sup. Ct. 221, 59 L. Ed. ——, decided January 11, 1915; Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371; Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024; McCreary v. Penn. Canal Co., 141 U. S. 459, 12 Sup. Ct. 40, 35 L. Ed. 817; Mowry v. Whitney, 81 U. S. (14 Wall.) 620, 20 L. Ed. 860; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Keystone Mfg. Co. v. Adams, 151 U. S. 139, 147, 14 Sup. Ct. 295, 38 L. Ed. 103; Westinghouse v. N. Y. Air Brake Co., 140 Fed. 545, 72 C. C. A. 61 (C. C. A. 2); and McSherry Mfg. Co. v. Dowagiac Mfg. Co., 160 Fed. 948, 89 C. C. A. 26 (C. C. A. 6). In the Garretson Case, at page 121 of 111 U. S., at page 291 of 4 Sup. Ct., 28 L. Ed. 371, it was said:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below: 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'"

The principle which dominated that case has been recognized by this court in several instances, some of which are Brennan & Co. v. Dowagiac Mfg. Co., supra (page 477); Yesbera v. Hardesty Mfg. Co., supra (page 125); McSherry Mfg. Co. v. Dowagiac Mfg. Co., supra; Dunn Mfg. Co. v. Standard Computing Scale Co., 204 Fed. 617, 619, 123 C. C. A. 111; and Herman v. Youngstown Car. Mfg. Co., 216 Fed. 604, 132 C. C. A. 608.

The case as presented to the trial court was this: The plaintiff did not comply with either of the rules stated in the latter portion of the quotation from the Garretson Case. It produced no evidence to apportion the profits between the improvement constituting the patented feature and the typewriter itself, as under the state of the evidence it should have done. It did not challenge the truthfulness of any of its witnesses or dispute the accuracy of the defendant's statements regarding its business transactions, or ask for the inspection and use of the defendant's books in its examination of defendant's president and bookkeeper, both of whom testified freely and apparently without evasion; nor did it request a segregation of the profits as between the tabulators and the typewriters proper. The tabulators were confessedly installed in the defendant's machines, because, as a good talking point, they facilitated sales and were demanded by dealers and their customers. Sales at a profit were doubtless made on account of them, which

would otherwise have been lost; but the amount of such profits, and the damages, if any, thereby occasioned cannot be inferred without proof. Maier v. Brown (C. C.) 17 Fed. 736, 738; Seeger Refrigerator Co. v. American Car & Foundry Co. (D. C.) 212 Fed. 742, 748, et seq.; Fay v. Allen (C. C.) 30 Fed. 446, 448.

No effort, however, was made to ascertain what profits, if any, resulted from them. The infringement was, in a sense, deliberate and intentional, in that defendant, on consideration, adopted and persisted in the use of tabulators and through circulars encouraged their purchase; but it installed them on the mistaken representation that the patents on tabulators had expired. The record, however, does not warrant the inference that it acted in bad faith. It was not shown or claimed that the defendant's accounts and other evidences of its business transactions were either designedly or otherwise so commingled and confused as to render it impossible, or even difficult, to ascertain the amount of profits derived from the patented and the unpatented features of the machines sold, or as not to disclose the cost of producing and marketing the defendant's two kinds of machines, and the difference, if there was any, in the receipts from their sale. For aught that appears, such evidence could have been extracted from witnesses or the defendant's books, or both. The case does not therefore fall within the rule in Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Brennan & Co. v. Dowagiac Mfg. Co., supra; Dowagiac Mfg. Co. v. Superior Drill Co., 162 Fed. 479, 89 C. C. A. 399 (C. C. A. 6), or other similar cases in which the infringement was willful, and, on account of the infringer's conduct, an apportionment of profits could not be made. After the opinion in Westinghouse Co. v. Wagner Mfg. Co. was announced, which was subsequent to that of the trial judge in this case, but before his control over it had been lost, he proposed in the exercise of a sound discretion to reopen it, that the plaintiff might offer additional evidence, if it desired so to do. His proposal was declined.

The decision of this case has been delayed in a vain effort to award a reasonable and defensible sum to the plaintiff on account of the profits made by the defendant by reason of its use of the infringing device, and thus to end the case without a miscarriage of justice. The state of the record forbids the determination of the profits traceable to the use of the plaintiff's tabulators. The establishment of infringement would be a barren victory, if the defendant is to be permitted to retain the fruits of its wrongdoing. Had we concurred in the rule applied by the master that the plaintiff is entitled to recover the entire profits on each infringing machine, we doubt whether we could agree with him as to the sum awarded. For the first of the infringing years, he fixed the profit on each machine containing the infringing device at 62½ cents. For the same period the profit on each machine sold without a tabulator was $3. For the second of such years he awarded as profits a sum in excess of the total profits for such year. This necessarily implies that the sales of noninfringing machines within that period resulted in a considerable loss. It is difficult to believe that this was so, in view of the fact that in both the preceding and succeeding years the defendant made a profit on its noninfringing machines; the succeeding year being

of a depressing character on account of the widespread financial disturbance which visited the country.

These inconsistencies in the master's report, whether they be real or apparent, may be cleared up by the rehearing which, in the interests of justice, we feel should be had, notwithstanding the failure of plaintiff to avail itself of the very reasonable offer of the trial court to open up the case for further evidence. If the difference between the average profit on each tabulating and on each nontabulating machine made or sold in a given year be multiplied by the number of tabulating machines made or sold within such year, the result ought to represent the profit which plaintiff is entitled to recover for such period. As the defendant was accustomed to making annual statements, compliance with the method above suggested should impose no hardship on it. Such method is not to be understood as exclusive; if it should be found not applicable, and the certainty which it would afford be not attainable, the parties may have occasion to resort to some other way of determining the amount of recovery, as was done in Herman v. Youngstown Mfg. Co., 216 Fed. 604, 132 C. C. A. 608, or, as suggested in U. S. Frumentum Co. v. Lauhoff, 216 Fed. 610, 132 C. C. A. 614, both of which were decided by this court. Note, also, the suggestions contained in Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., supra.

In view of the probabilty that plaintiff may show that the profits due to the tabulators is separable from those made on the entire machines and may make proof sufficient on which reasonably to base the recovery of a definite sum as profits, and, perhaps, as damages, we are constrained, as in the Frumentum Case, to reverse and remand, but for the purpose only of permitting it to make such showing and proof.

The plaintiff will pay the costs of this proceeding.