ROTH et al. v. HARRIS.

(Circuit Court of Appeals, Second Circuit. February 16, 1909.)

No. 148.

1. PATENTS (§ 310*)—ANTICIPATION—SUBSEQUENT PATENT ON PRIOR APPLICATION.

An unpleaded patent issued after the patent in suit cannot be used to defeat the latter because the specification states that the application was filed on a date prior to that of the filing of the application for the patent in suit, especially in the absence of proof that no changes were made in the application after such filing.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 522; Dec. Dig. § 310.*]

2. PATENTS (§ 328*)—INVENTION AND INFRINGEMENT—TUNE-SHEET ATTACHMENT FOR PIANOS.

The Hobart patent No. 765,240, for a tune-sheet attachment for auto-pneumatic pianos, in which the tune-sheet and feed roller are contained in a box detachable from the piano case, was not anticipated, and dis-

closes invention, and, while not generic, marks a distinct improvement in the art. Also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

3. PATENTS (§ 112*)—PRIORITY OF INVENTION—CONCLUSIVENESS OF DECISION OF PATENT OFFICE.

The decision of the Patent Office on the question of fact as to priority of invention between two contesting parties in interference proceedings is conclusive in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 165; Dec. Dig. § 112.*]

4. PATENTS (§ 325*)—SUIT FOR INFRINGEMENT—COSTS.

In a suit for infringement of two patents, where defendant prevails as to one, he is entitled to the same costs as though there had been a separate suit thereon.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 607; Dec. Dig. § 325.*]

Appeal from the Circuit Court of the United States for the Northern District of New York.

On appeal from a decree of the Circuit Court for the Northern District of New York holding valid and infringed letters patent No. 765,240, granted to Adam Hobart, July 19, 1904, for improvements in tune-sheet attachments for auto-pneumatic pianos. The application was filed May 21, 1904. The opinion below is reported in (C. C.) 162 Fed. 160.

Kerr, Page & Cooper, for appellant.

Briesen & Knauth, for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The invention of Hobart relates to a tune-sheet attachment, which is separable from the piano case and permits tune-sheets to be inserted readily. When the attachment is secured to the case a true engagement is at once established between the tune-sheet and the duct bridge and, simultaneously, the tune-sheet feed roller is intergeared with the driving shaft. The specification states that the invention consists in providing an auto-pneumatic piano, or piano player, with a box containing the tune-sheet and rollers, which is separable from the piano case. When this box is connected to the piano case a proper engagement is made immediately between the duct bridge and driving shaft attached to the piano case and the tune-sheet and feed roller in the box, the perforations in the sheet registering accurately with the openings of the duct bridge.

The first four claims and claim 6 are involved. The first claim is as follows:

"An auto-pneumatic piano case having a duct bridge, combined with a box having a tune-sheet and tune-sheet rollers, and means for detachably securing said box to said case, substantially as specified."

The other claims are more limited, embracing several subsidiary elements. Infringement is not denied. The defense relied on is lack of novelty and invention.

The invention of Hobart is not generic but it marks a distinct improvement in the art. By arranging and adjusting the tune-sheet in a separate box before it is attached to the piano he avoids the difficulty which had theretofore existed and which frequently resulted in the tearing and destroying the sheet and spoiling the music. The adjustment of the sheet to the old rollers required the services of a person of skill and experience, whereas a novice can successfully make the necessary adjustment in the patented structure. By detaching the box the entire apparatus is in plain view and it is manifest that a sheet can be removed and a new one substituted without encountering any of the difficulties which existed when the rollers were attached directly to the back frame of the piano.

Hobart's improvement is concisely described by Judge Holt as follows:

"Previous to Hobart's invention, the box or case containing the tune-sheet and the feed roller was attached to the piano frame, and it was inconvenient to change the tune-sheet when it was wished to change the music. Hobart's patent provided for placing the feed roller in a box, slidable upon brackets, and easily withdrawn from the piano."

The alleged Brockway prior use is unavailable for various reasons. It is, however, only necessary to say that the defendant has fallen far short of complying with the rule which requires him to establish the defense by proof that "shall be clear, satisfactory and beyond a reasonable doubt." Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154. The most charitable view to be taken of the testimony is to conclude that the witnesses were mistaken.

The patent to Parker of March, 1892, does not cover a device which operates an endless tune-sheet. It is true that the claims of the Hobart patent are not expressly limited to an endless tune-sheet but the specification describes and the drawings show such a sheet and it is not easy to see how the apparatus could operate with any other sheet. The tune-sheet of the Parker patent is known as the spool variety, each spool having a sheet attached to and wound upon it. When in use the free end of the sheet is attached to another roller which unwinds it from the first. When the tune has been played the music stops and the sheet is rewound on the first roller, which is removed from the piano, and, if another tune is desired, another roller carrying it must be substituted. Hobart's rollers will operate any number of endless tune-sheets, whereas Parker requires as many rollers as there are tunes and his apparatus could not operate the sheets of the patent in suit. The Parker patent was not pleaded in the answer and cannot be used as an anticipation. It may be considered as showing the prior art, but, as Parker and Hobart were dealing with different problems, there was ample room for the exercise of the inventive faculty in making the improvement of the later patent notwithstanding the disclosures of the former.

The patent to Davis of June, 1898, describes a device for operating the keys of the piano by electro-magnets instead of pneumatically, and is therefore outside the claims of the patent in suit in each of which "an auto-pneumatic piano case having a duct bridge" is an ele-

ment. It is not easy to see how the Davis device can be regarded as an anticipation when it must be conceded that if made now for the first time it would not infringe. Furthermore, like the Parker construction, it shows a spool sheet wound upon and permanently secured to the roller.

The patent to Shonnard of April, 1897, is also for an electric piano player and it may be said, as applicable to both Davis and Shonnard, that perforated paper sheets cannot be used successfully upon pianos of this type for the reason that the paper becomes torn by the spring fingers and charred by sparking at the contacts. Paper sheets were a failure commercially and have generally been discontinued in electric devices. The Shonnard structure as described and illustrated by the drawings appears to be inoperative, but in any view it fails to invalidate the Hobart claims. It cannot be denied that prior to Hobart's invention, tune-sheets had been carried by movable boxes or drawers but Hobart was the first to carry an endless tune-sheet in a movable box so arranged as to establish perfect connection with the duct bridge of an auto-pneumatic piano.

The second patent to Shonnard, No. 780,687, cannot be considered as an anticipation, first, because it is not pleaded and, second, because it was not issued until January 24, 1905, six months after the Hobart patent. Dubois v. Kirk, 158 U. S. 58, 64, 15 Sup. Ct. 729, 39 L. Ed. 895; Anderson v. Collins, 122 Fed. 451, 458, 58 C. C. A. 669.

In Writing Machine Co. v. Wagner Co., 151 Fed. 576, 582, 583, 81 C. C. A. 120, we held that a model filed in the Patent Office, which is a full operative embodiment of the patented mechanism may be considered upon the question of invention arising upon a subsequent patent. But we have never gone to the extent of holding that an unpleaded patent issued after the patent in suit may defeat the latter because the specification states that the application was filed prior to the application of the patent in suit. Counsel for defendant concede that the Shonnard patent cannot be used as an anticipation but they contend that the specification and drawings may be used as showing the prior art. Just where the line of distinction, from a practical point of view, is to be drawn, it is difficult to perceive.

If such drawings are permissible to show the state of the art, and they show it to be identical with the device of the disputed patent, it is not easy to understand why the patent is not anticipated. Assuming, however, that specification and drawings may be considered, we think they are entitled to little weight unless supplemented by proof showing their condition at the time of filing and that no material changes have been made in either. We have here nothing but the printed date on the Shonnard specification as proof that his device was made before Hobart's and nothing but inference to show that the specification and drawings were those filed in December, 1902. It would be a dangerous rule to establish that a patent granted in 1904 may be destroyed by the disclosures of a patent granted in 1905, the latter not being pleaded and no word of proof being offered as to what changes were made during the two years and more it remained in the Patent Office, inaccessible to the public.

The second Shonnard patent like the first is for an electric player and though the drawings show a receptacle containing an endless tune-sheet it could not be substituted for the Hobart box without several important changes. Apparently the tune-sheet has to be cut in order to be put in place as one of the rollers over which it passes is a fixture. After being adjusted the ends must be fastened together.

The objections to using a device designed for an electric piano in an auto-pneumatic piano, heretofore alluded to, are equally applicable to the second Shonnard patent. The differences and similarities between the devices of Shonnard and Hobart may be illustrated by comparing the first claim of the Hobart patent with the first claim of the Shonnard patent, which is as follows:

"(1) In an electric self-playing musical instrument, a music-sheet box, a common roller-terminal, contact-fingers and a case for said fingers; in combination with said pieces above and on opposite sides of said box, rails attached to said case and set into notches in the sides of said side pieces, and springs bearing upon said rails to hold them in place, substantially as described."

The foregoing are the patents principally relied on by the defendant and, after endeavoring to understand them, we have reached the same conclusion as the Judge of the Circuit Court and agree with him in the following statement:

"The defendant cites several previous patents showing various methods of moving the attachment to the piano containing the feed roller and the tune-sheet, so that the tune-sheet can be more conveniently changed than if the attachment was permanently fixed in the piano, but most of these arrangements leave the apparatus attachment to some extent to the piano, and none of them seems to me to be sufficiently similar to the Hobart device to amount to an anticipation. The device is practically useful and has been commercially successful, and I think that it involves sufficient invention to make a patent issued for it valid."

The protracted and stubbornly contested interference in the Patent Office between Hobart and Goolman, one of the members of the defendant's copartnership—the Automatic Musical Company—which only ended when the Court of Appeals of the District of Columbia finally decided in favor of Hobart, is wholly inconsistent with the defendant's present contention that the patent is void for lack of patentability. Men do not struggle for years to secure a valueless thing.

The defendant asks that we find that Goolman and not Hobart was the inventor of the patented structure. This we decline to do.

In Morgan v. Daniels, 153 U. S. 120, 125, 14 Sup. Ct. 772, 773, 38 L. Ed. 657, the Supreme Court says:

"Upon principle and authority, therefore, it must be laid down as a rule that where the question decided in the Patent Office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

We may say, however, that having read the opinion of the Court of Appeals of the District of Columbia we are satisfied that the case was correctly decided and that the result would have been the same if the

additional testimony found in the present record had been included in the record of the Patent Office.

The bill alleged the infringement of a patent to F. C. Whitmore and the cause came on for hearing before the Circuit Court upon the Hobart and Whitmore patents. As to the latter the bill was dismissed but full costs were awarded the complainants. As the defendant succeeded as to the Whitmore patent he was entitled to the costs to which he would be entitled had there been a separate suit against him on that patent.

As the principal litigation relates to the Hobart patent we think the proper disposition to make of the matter is to permit the defendant to tax his costs and disbursements incident to the defense of the Whitmore patent and deduct the amount from the decree.

The decree, as so modified, is affirmed with the costs of this court.