## A. KIMBALL CO. v. NOESTING PIN TICKET CO.

(Circuit Court of Appeals, Second Circuit. December 16, 1919.)

No. 74.

1. PATENTS ⊘═16—ATTRIBUTES OF "INVENTION" STATED.
   While patentable "invention" is not a term of legal art, or capable of judicial definition, yet it is a means only, or the embodiment of the inventive idea, and merits the title, even if the want it meets is not apparent until some previous invention, imperfectly satisfying the more universal want, discloses the subordinate and narrower need.

2. PATENTS ⊘═328—FOR PIN TICKET DEVICE VALID.
   The Thompson patent No. 1,252,862, for an improved pin ticket device to be attached to textile and other articles offered for sale, held valid against the contention that it did not disclose invention.

3. PATENTS ⊘═17—WHEN MECHANICAL SKILL BECOMES INVENTION STATED.
   As a mechanic is one who applies his trade by rule or rote, and only uses what he learned yesterday to do the work of to-day, it may become invention, where a mechanic uses insight or foresight to comprehend a problem, and uses even the learning of yesterday to do new things in a new way.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by the A. Kimball Company against the Noesting Pin Ticket Company. Decree for plaintiff, and defendant appeals. Affirmed.

Action is upon patent 1,252,862, issued to Eugene W. Thompson January 8, 1918. The subject of invention is a "pin ticket," which means a card or tag intended to bear price marks or other descriptive matter, and affixed to articles offered for sale (usually textile), by means of a piece of wire, so formed as to present a staple whose prongs pass through both card and cloth; but the base of said wire staple is so formed and prolonged (at right angles to the staple points) as to embrace (when bent) the conjoined edges of the pierced cloth and card. The staple ends are then also bent over or back against the rear face of the card.

Of the claims in suit, the sixth defines the invention in most general terms, and is as follows:

"In a pin ticket having a plurality of round-pointed double-shank pins formed of a single piece of wire, the wire between said pins engaging with the ticket to form a support therefor, the shank of said pins passing through the ticket, and the free ends of the wire being bent to engage with both surfaces of the ticket to hold the pins in engagement therewith."

The seventh claim is not sufficiently different to require quotation. The court below found the patent valid and infringed; defendant appeals.

Cyrus N. Anderson, of Philadelphia, Pa., and Walter K. Earle, of New York City, for appellant.

Nathan Heard, of Boston, Mass., and Abr. A. Silberberg, of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Appellant states that the only substantial question here presented is validity; i. e. can invention be found in this "pin ticket"?

⊘═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

We accept the statement, and shall endeavor to answer the query, without bolstering decision by dwelling on the presumption attaching to grant of letters, or the admitted fact that defendant controls and manufactures under another patent, over which priority was awarded Thompson after a protracted interference. Such proceedings assume a belief in validity on the part of both contestants. Roth v. Harris, 168 Fed. 279, 93 C. C. A. 581.

[1] Invention, as we are instructed by the highest court, is not judicially to be defined; i. e., it cannot be determined as to limit of meaning. But many attributes may be marked. Thus patentable invention is a means only; it is the embodiment of the inventive idea (Corrington v. Westinghouse, &c. Co., 178 Fed. 715, 103 C. C. A. 479); and even the smallest invention, if it merits the title, must meet an existing want, yet that want, invoking invention, may never be apparent until some previous invention, imperfectly satisfying the more universal want, discloses the subordinate and narrower need (1 Rob. Pat. 134).

It is this thought that justifies, and indeed compels, study of the prior art, as distinguished from anticipatory patents or uses. To know, not only what the "more universal want" was, but how far and by what means it had been supplied, is a process not seldom resulting in the validation of modest inventions, and the destruction of many of great pretense.

This indicates that "invention" is not a term of legal art, like "common carrier" or "contingent remainder"; nor can applicability be fixed by consulting dictionaries, while reports furnish, not precedents, but only illustrations. What does connect the large word with the perhaps small thing is evidence; and litigations like this become studies of facts, as varying in patent matters as in other human contests.

[2] This record shows that, trivial as the article seems (e. g.) to ourselves, pin tickets have long been a widely used trade adjunct; also that much effort has been expended to produce them cheaply in quantity, yet affixable to a fabric's edge firmly and with ease, without pricking the operator or injuring what is marked.

The "more universal want" has been and still is largely supplied by the "Empire ticket," made under an expired patent (St. John, 340,-961). The substantial difference between that ticket and Thompson's device is that the prongs of the latter's staple are formed, not by cutting a wire transversely and making thereby a sharp point, but by doubling the wire back on itself and so producing a smooth, blunt point.

The Bayer reissue, 13,769, shows that making smooth pointed pins by doubling a small wire on itself was known before Thompson; no more is claimed for it. But the tool which rapidly and cheaply makes staple points by cutting wire may leave burrs or roughened edges, which, though usually negligible, cut (e. g.) delicate silk.

Thus the "narrower need" is disclosed, and Thompson is confessedly the first to supply it. Others have tried to; probably Bayer did; but his pin could not hold its ticket firmly, and devices clutching or binding, but not piercing, the fabric, have been put on the market, but without covering the ground.

Here, then, is a want shown to have long existed among intelligent merchants, whose desires are always studied by equally intelligent manufacturers, and the question recurs whether to furnish the means of supplying that want is invention.

[3] It is, of course, urged, and naturally, that no more than a mechanic's skill was needed to take the final step. But a mechanic is one who applies his trade by rule or rote, and only uses what he learned yesterday to do the work of to-day in the same old manner. He may do it excellently, but if he has, not only hindsight, but insight or foresight, first to comprehend the problem and use even the learning of yesterday to do the new thing in a new way, that mechanic has usually earned the inventor's title.

This is what Thompson has done, if the matter be reasoned from the premises of evidence. It is, however, an important evidential element that the trade world to which this little device must appeal, whether of manufacturers or buyers, evidently regards it as important. That word is always relative, and courts and juries should learn its meaning from the evidence, and not their own emotions.

Thus guided by the evidence, we find as matter of fact that the patent discloses invention, and in so doing we arrive at a result not new in this court, and do it in substantially the same way as heretofore. George Frost Co. v. Cohn, 119 Fed. 505, 56 C. C. A. 185; David v. Harris, 206 Fed. 902, 124 C. C. A. 477; Barry v. Harpoon, etc., Co., 209 Fed. 207, 126 C. C. A. 301; Fonseca v. Suarez, 232 Fed. 155, 146 C. C. A. 347.

The decree is affirmed, with costs.