## UNITED SHOE MACHINERY CORPORATION et al. v. MUTHER.

(Circuit Court of Appeals, First Circuit.   April 13, 1923.)

No. 1583.

1. **Patents** ⟨key⟩112(1)—**Decision of Court of Appeals of District of Columbia on appeal from Commissioner not res judicata in federal courts.**

The decision of the Court of Appeals of the District of Columbia on appeal, under Rev. St. § 4914 (Comp. St. § 9459), from the decision of the Commissioner of Patents, is not final and conclusive, and, though not to be disregarded, unless clearly erroneous, is not res judicata in subsequent proceedings in the federal courts.

2. **Patents** ⟨key⟩112(4)—**Decision of Court of Appeals of District of Columbia controlling on question of invention or discovery, unless contrary clearly established.**

The decision of the Court of Appeals of District of Columbia, rendered on appeal from the Commissioner of Patents, must be accepted as controlling as to the question of fact of who was the original and first inventor or discoverer, unless the contrary is established by testimony, which in character and amount carries thorough conviction.

3. **Patents** ⟨key⟩324(5)—**Decisions of Patent Office and Court of Appeals of District of Columbia, before court without being offered in evidence.**

In a bill for infringement, where the answer of the defendant alleged the decisions of the Patent Office and the Court of Appeals of the District of Columbia finding defendant to be the prior inventor, and plaintiff admitted such allegations to be true, the decisions of the Patent Office and the Court of Appeals were before the court without being offered in evidence, and even though excluded when offered.

4. **Patents** ⟨key⟩112(1)—**Same presumption in favor of decisions of Commissioner of Patents as apply to other administrative officers.**

The same presumption should be applied to the acts and decisions of the Commissioner of Patents as to those of any other administrative officer to whom Congress has appointed the administration of any law.

5. **Patents** ⟨key⟩312(2)—**Exclusion from evidence of decisions of Commissioner of Patents and District Court of Appeals erroneous.**

In infringement proceedings, where the defendant set up the decision of the Commissioner of Patents and the Court of Appeals of the District of Columbia adjudging him to be the prior inventor of the patent in suit, the record of those decisions was admissible in evidence, and its exclusion erroneous.

6. **Courts** ⟨key⟩356—**Decree in equity not reversed for erroneous exclusion of testimony, unless material prejudice would clearly result from affirmance.**

Under equity rule 46 (198 Fed. xxxi, 115 C. C. A. xxxi), evidence erroneously excluded is reported on appeal, and a reversal will not be ordered because of the error, unless material prejudice would clearly result from affirmance of the decree.

7. **Patents** ⟨key⟩91(4)—**Evidence sufficient to warrant finding that defendant was not prior inventor, notwithstanding contrary decisions of Patent Commissioner and District Court of Appeals.**

Evidence in patent infringement proceedings *held* sufficient to support the finding of the trial judge that defendant was not the prior inventor of the invention in suit, notwithstanding a contrary decision by the Commissioner of Patents and by the Court of Appeals of the District of Columbia.

8. **Appeal and error** ⟨key⟩1008(1)—**Findings of trial judge not disturbed, unless clearly wrong.**

The findings of fact by the trial judge will not be reversed, unless clearly wrong, particularly where such judge indicates, in arriving at

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

his conclusion, that his observation of the witnesses who testified had an important part in aiding him to arrive at a conclusion.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Bill in equity by Lorenz Muther against the United Shoe Machinery Corporation and others for the infringement of letters patent. Decree for plaintiff, and defendants appeal. Affirmed.

Charles F. Choate, Jr., of Boston, Mass. (Frederick L. Emery, Nelson W. Howard, and Harlow M. Davis, all of Boston, Mass., and Lucius E. Varney and Edward G. Curtis, both of New York City, on the brief), for appellants.

Edward F. McClennen, of Boston, Mass. (Francis J. V. Dakin, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

JOHNSON, Circuit Judge. This is a bill in equity charging infringement of letters patent No. 1,112,643, issued to Lorenz Muther, the appellee, October 6, 1914, on an application filed January 31, 1914, for a device for setting invisible eyelets.

The appellant is the owner of a patent for a similar device issued to it October 31, 1922, on an application filed August 1, 1914, by Henry T. Doulett, and a second application filed by him November 13, 1914.

An interference was declared between the Doulett invention and that of the appellee after letters patent had been issued to the latter. Doulett was found to be the prior inventor, and letters patent were issued to the United Shoe Machinery Corporation as his assignee. This bill was filed on the 19th day of August, 1916, after the interference had been declared, but before the hearing upon the same was concluded.

The tool to which the patent relates is one for invisible eyeletting, which, in conjunction with a shoe machine, punches a hole through several layers of leather and has an enlargement or upsetting shoulder upon it which is pushed down through the outer layer of leather, and an eyelet inserted from the under side is turned down and outwardly by this upsetting shoulder and clenched beneath the outer layer upon the next layer. A restricted portion above the upsetting shoulder allows the outer layer to spring back after the shoulder passes through it, so that it is not caught in the prongs of the eyelet in the clenching process. As infringement is admitted if Muther was the prior inventor, the only issue involved is that of priority as between Doulett and Muther in the invention of this contracted portion of the device which, in practical operation, is found to be one of its important features.

The claims in the patent to Muther cover this contracted portion of the device. The first application filed by Doulett on August 1, 1914, did not contain this; but in the second application, filed November 13, 1914, it is covered by the claims therein made, the applicant stating that this second application is a continuation of his prior applica-

tion filed August 1, 1914, and "discloses and claims certain features which were inadvertently omitted from said prior application."

An answer was filed by the United Shoe Machinery Company on September 16, 1916, denying that the plaintiff was the true, original, or first inventor of the device disclosed and claimed in said letters patent, and alleging that Henry T. Doulett was the true, original, and first inventor of the same; that he had made an application for letters patent based on said invention, and had assigned his application to the defendant; that he had conceived such invention and disclosed it to others, and had reduced it to practice before the plaintiff claimed to have conceived said invention.

On February 1, 1922, a supplemental answer was filed, which, in addition to the denials and allegations in the first answer, alleged that prior to the filing of the bill of complaint an interference was declared by the Commissioner of Patents between the application of Doulett and the letters patent in suit; that the plaintiff had voluntarily appeared and contested the granting of a patent upon the application of Doulett; and that, after several successive appeals, it was finally decided by the Court of Appeals for the District of Columbia that said Doulett, and not the plaintiff, was the true, original, and sole inventor of said device and priority of invention was awarded to Doulett.

The patent in suit contains three claims which are as follows:

"1. A device for setting eyelets in one of a plurality of layers of a flexible material, said device comprising an anvil and a co-operating setting device having a projecting setting shoulder and a contracted portion above the setting shoulder.

"2. An eyelet setting device consisting of means for setting eyelets in one of the outside layers of a plurality of layers of material, comprising a lower anvil, an eyelet positioning device and an upper setting device having a slightly projected setting shoulder and a contracted portion above the setting shoulder.

"3. The combination of a punching and eyelet setting device for setting eyelets in one or mort of the layers of a plurality of layers of material, comprising a punch and a setting device having a projecting setting shoulder and a contracted portion above the setting shoulder."

The issues raised by the supplemental answer, by way of abatement, were heard separately and disposed of before hearing upon the merits of the case, and the motion of the defendant to dismiss the bill, because of the decision of the Court of Appeals of the District of Columbia, was denied. This is assigned as error.

Section 4914, R. S. (Comp. St. § 9459), authorizing an appeal from the Commissioner of Patents to the Court of Appeals of the District of Columbia, provides in part as follows:

"After hearing the case the court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent Office, and shall govern the further proceedings in the case. But no opinion or decision of the court in any such case shall preclude any person interested from the right to contest the validity of such patent in any court wherein the same may be called in question."

[1] It has been authoritatively settled that the decrees of the Court of Appeals are not final and conclusive; that they are rendered only upon the testimony which was taken in the Patent Office and are bind-

ing only on the Commissioner of Patents; that the court is only a part of the administrative machinery of the Patent Office and that it decides and hears administrative questions only. There are numerous decisions in support of this, and the citation of Frasch v. Moore, 211 U. S. 1, at page 9 (53 L. Ed. 65) 29 Sup. Ct. 6, 8, is sufficient. The court there says:

"In interference cases and in all others going up from the Commissioner to the Court of Appeals there is no final judgment in the cause, but one interlocutory in its nature and binding only upon the Commissioner 'to govern the further proceedings in the case.'"

The decision of the Court of Appeals was not res adjudicata and there was no error in denying the motion to dismiss.

The learned judge who sat in the District Court refused to receive in evidence the record of the decrees rendered by the Examiner of Interferences, the Examiners in Chief, the Commissioner of Patents, and the Court of Appeals of the District of Columbia upon the issue of priority raised by the declaration of interference. This is assigned as error and must be disposed of at the outset.

This bill, alleging infringement of letters patent, is not brought under any particular section of the Revised Statutes, but is addressed to the court as one having full equity powers. Under section 4920, R. S. (Comp. St. § 9466), it is provided:

"In any action for infringement the defendant may plead the general issue, and having given notice in writing to the plaintiff or his attorney thirty days before, may prove on trial any one or more of the following special matters:
*    *    *    *    *    ,    *    *    *    *    *
"Fourth. That he was not the original and first inventor or discoverer of any material and substantial part of the thing patented."

The only issue involved was whether Doulett or Muther was the prior inventor of a contracted portion above the upsetting shoulder of the invisible eyeletting device.

[2] It is contended by the defendant that the records of the decisions in the Patent Office and by the Court of Appeals should have been admitted. Under the authority of Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, the decision of the Court of Appeals "must be accepted as controlling, upon that question of fact, in any subsequent suit between the same parties, unless the contrary is established by testimony which, in character and amount, carries thorough conviction."

In Morgan v. Daniels, supra, an unsuccessful applicant for a patent sought under the provisions of R. S. § 4915 (Comp. St. § 9460), to have a patent granted to him by the court. It will be noted that the case was submitted to the Circuit Court upon the testimony in the interference proceedings and no other, and therefore what was said by the Supreme Court applied to a case where the same testimony was before the court that had been considered by the Patent Office and the Court of Appeals for the District of Columbia. The statement in the opinion in regard to the weight to be given to a decision of the Patent Office is broad enough, however, to cover a case

like the one before us where additional testimony was taken in the District Court.

[3] In the present case a patent had not been issued to the defendants at the time of the hearing in the District Court, and they were only the owners of an invention for which an application had been made, which had been placed in interference with the patent in suit and priority awarded to its inventor. The plaintiff, therefore, could not avail himself of the provisions of R. S. § 4918 (Comp. St. § 9463), as they afford a remedy only where there are "interfering patents." The allegations as to the decisions in the Patent Office and the Court of Appeals set up by the defendant in its answer were admitted by the plaintiff, and with this admission these decisions were before the court below without being offered in evidence; and even if the court excluded them when offered, it still had knowledge that they had been rendered.

[4] The Commissioner of Patents is an administrative officer of the government, charged with the duty of administering the patent laws of the United States, and the same presumption should be applied to his acts and decisions as to those of any other administrative officer to whom Congress has committed the administration of any law. This was pointed out by Judge Putnam in Greenwood et al. v. Dover et al., 194 Fed. 91, 95, 114 C. C. A. 169, 173, where he says:

"The conclusion in Morgan v. Daniels was not a peculiar outgrowth of the patent system. It was simply a phase of the general rules with reference to the determinations of the executive departments, where the statutes authorize them to investigate and decide questions of fact preliminary to a grant on which private rights are to rest. We need cite in this particular only the Maxwell Land Grant Case, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949, and United States v. Bell Telephone Company, 167 U. S. 224, 17 Sup. Ct. 809, 42 L. Ed. 144."

And he also says (194 Fed. at page 94, 114 C. C. A. 172):

"As it is, however, we are compelled to accept in this single particular the view claimed by Dover, that the judgment of the Court of Appeals stands akin to a departmental decision, although no court could avoid the impression that in a certain sense and to a certain extent it is of greater weight. It is sufficient for us, however, to apply to this case the rule of Morgan v. Daniels, that there must be a clear conviction on this record that the conclusion of the Court of Appeals was erroneous. In saying this we need not trouble ourselves about the varying expressions of various courts with regard to analogous cases, some of which would even require Dover to maintain his position by proofs beyond a reasonable doubt. We are satisfied to reduce all such expressions to the one used in Morgan v. Daniels, to the extent that the record in this case should establish by a clear conviction that Dover is entitled to maintain his bill."

In Automatic Weighing Machine Co. v. Pneumatic Scale Corporation, Ltd., 166 Fed. 288, 304, 92 C. C. A. 206, 222, a case in this circuit, Judge Colt in his opinion said:

"Upon this question of fact the decision of the Patent Office tribunals and the Court of Appeals of the District of Columbia is entitled to great weight, if it is not absolutely controlling."

The fact there determined was whether one of the inventors had been reasonably diligent in adapting and perfecting his invention.

In Roth v. Harris, 168 Fed. 279, 93 C. C. A. 581, which was an infringement case, the plaintiff relied upon an invention made by one Hobart. There had been an interference in the Patent Office between Hobart and one Goolman, who had made an application for an invention similar to Hobart's, and on appeal to the Court of Appeals the decision was in favor of Hobart. The defendant had succeeded to the ownership of the invention made by Goolman and the court said (168 Fed. at page 283, 93 C. C. A. 585):

"The defendant asks that we find that Goolman, and not Hobart, was the inventor of the patented structure. This we decline to do. * * * Morgan v. Daniels, 153 U. S. 120, 125. * * *

"We may say, however, that, having read the opinion of the Court of Appeals of the District of Columbia, we are satisfied that the case was correctly decided, and that the result would have been the same if the additional testimony found in the present record had been included in the record of the Patent Office."

In Hillard v. Remington Typewriter Co., 186 Fed. 334, at page 336, 108 C. C. A. 534, 536 (C. C. A. Second Circuit), which was an infringement suit, the court said:

"The question in interference proceedings is which of the contestants was the prior inventor. The question of invention is not involved and is in fact conceded. Each party contends for the prize of being declared the first inventor. No one, with the ordinary brain development, would offer proof to destroy his adversary's claims and his own as well. Both believe an invention has been made; each claims to be the inventor, and when the decision is finally made it carries a strong presumption in favor of the successful party. As between Brooks and his privies and Hillard, the latter is to be deemed the prior inventor until that presumption is overcome by clear and convincing proof. Morgan v. Daniels, 153 U. S. 120."

In Novelty Glass Mfg. Co. v. Brookfield et al., 170 Fed. 946, at page 955, 95 C. C. A. 516, 525 (C. C. A. Third Circuit), which was an infringement suit brought by the successful party in interference proceedings, the court said:

"It was so decided in the interference proceedings, which, while not conclusive upon us, it is for the defendants to overcome, Morgan v. Daniels, [supra], and this, as is shown by this review of the evidence, they have not done."

In Computing Scale Co. v. Standard Computing Scale Co. Ltd., 195 Fed. 508, at page 515, 115 C. C. A. 418, 425 (C. C. A. Sixth Circuit), which was an infringement suit, the parties relied respectively upon inventions of Hotsapillar and Osborn, and the court said:

"Complainant also relies upon the effect of the patent office decisions in the interference between Hotsapillar and Osborn, and we may, for the purpose of this opinion, assume that the present parties are affected as Hotsapillar and as Osborn would have been. An interference award, deciding a direct issue of fact, upon the question of priority, should be adopted by the courts in subsequent litigation between the same parties, unless there is 'thorough conviction' to the contrary."

The court found, however, that the Patent Office had not, according to its own construction, authoritatively passed on the question of fact which it was considering.

[5] In all these cases the complainant in an infringement suit relied upon the presumptive force of a decision of the Patent Office in an interference case, and we can see no valid reason why the defendant in such a suit may not do so.

The question of priority, determined as a fact in favor of Doulett, as a part of his application proceedings, was not closed to the plaintiff; but we are of opinion that the record of the decision in the Patent Office, and that of the Court of Appeals, was admissible in evidence, not as a judgment of a court to be pleaded as res adjudicata, but because of the presumption it raises, and it is not to be overthrown unless under the language of Morgan v. Daniels, there was testimony which "in character and amount carries thorough conviction."

[6] Under equity rule 46 (198 Fed. xxxi, 115 C. C. A. xxxi), the evidence which was excluded has been reported to this court and the rule prohibits us from reversing the decree of the District Court because of error in its exclusion, unless we are clearly of opinion that material prejudice would result from an affirmance of this decree.

The testimony in the District Court in support of the priority of Doulett's invention came from several witnesses, some of whom testified that he showed them his invention in the summer of 1913, and others that it was used in the factory of Leonard & Barrows, where Doulett was employed that summer and in the fall of that year. All of them did not testify that it had a restricted portion above the upsetting shoulder; and all who did so testify were testifying about a portion of the tool which was less than one-tenth of an inch in diameter and wholly or partially covered by a spring-pressed sleeve. Their testimony was not given until three years after they claimed to have seen it, when their depositions were taken for use in the interference proceedings, and they testified in the District Court about five years after these depositions were taken. Their testimony was not corroborated by any written evidence or records, so far as it related to the contracted portion above the upsetting shoulder.

The spring-pressed sleeve in Doulett's device extended nearly down to this upsetting shoulder, as appears from the fact that in the claims in his application he describes the sleeve as completing the clenching of the eyelet after it has been turned down and outward by the upsetting shoulder.

The space between the upsetting shoulder and the sleeve was so slight that it seems incredible that any one would have had the fact that the portion above the upsetting shoulder was contracted impressed upon him so strongly that he would retain it in memory for several years.

The first application filed by Doulett contained no reference to a contracted portion above the upsetting shoulder nor was it included in any of the claims, nor shown in any of the drawings accompanying it. Doulett's correspondence with his patent solicitors was not before the Patent Office in the interference hearing, nor before the Court of Appeals. At the hearing before the court below it was introduced in evidence, and contained a letter written by Doulett to his patent solicitor on July 4, 1914, which in part is as follows:

"Dear Sirs: Your firm has been recommended to me by Mr. Charles E. Hayes, one of your clients who has been granted a patent by your firm. I would like to submit my invention for search of the Patent Office records in regards to my invention, which has been tested and used since March 1, 1914."

Nowhere in the letter is any mention made of any contracted portion of the center piece of the set, although in his letter he divides his invention in six parts and quite minutely describes each one.

He describes his center piece as follows:

"No. 2 is the center piece of the set which is threaded two-thirds of its length with slot cut in top, the lower end being reduced in size to form a shoulder near the end. The shoulder of the extreme end being cupped out, this center piece of set is threaded through the barrel so the set can be raised or lowered according to the thickness of the work to be eyeletted."

"No. 4 is a spring which goes over the end of the center piece of set, and inside the sleeve for the purpose of forcing the sleeve down until pressure comes on the sleeve to force it up against the lower end of the barrel."

The center piece of the set which is described in No. 2 is the one which Doulett now claims had a contracted portion above the upsetting shoulder, and which he says was an important part of the device which he invented and reduced to practice in the factory of Leonard & Barrows in September, 1913.

He sent his solicitors a model also, and this model had a center piece which was straight above the upsetting shoulder and had no contracted portion there.

On July 9, 1914, his solicitors wrote him for further explanation in regard to the manner in which his device operated. Their letter contains the following inquiry:

"Please confirm our understanding that in the operation of your tool the same is arranged to operate downwardly upon the eyelet and the initial action is for the little shoulder on the set to turn the top of the eyelet outward slightly, after which the sleeve clinches the eyelet to finally secure the same in place. On examining the leather sample sent by you we cannot determine whether the sleeve acts on the eyelet by engaging directly with the leather above the eyelet or not. In other words, does the sleeve engage the eyelet directly in the final clinching action? Are we correct in understanding that the leather flap pieces for the shoe are stitched together and punched before your tool is used to affix the eyelet in the aperture?"

In answer to this Doulett wrote his solicitors, on July 16, 1914, as follows:

"Sirs: In answer to yours of the 9th instant, to confirm your understanding that in the operation of the set, the same is arranged to operate downwardly upon the eyelet. And the initial action of the little shoulder on the set is cupped so that it will turn the top of the barrel of the eyelet outward and down, after which the sleeve completes the clinching of the eyelet, said sleeve does act by engaging directly on the layer of leather above the eyelet. But because the lower end of the sleeve is rounded it does not mark the leather.

"The leather is stitched together and punched before the eyelet is put in."

In this letter describing the operation of his tool in clenching the eyelet, no reference is made to a restricted portion above the setting shoulder.

On October 16, 1914, his solicitors wrote him calling his attention to the fact that the examiner had cited a patent to Glines, granted September 8, 1914, and that the Glines application was filed on April 27, 1914, and stating that they were desirous of eliminating this patent as a reference, stating:

"If you, as we believe is the case, invented your device prior to the date of April 27, 1914, we would like to have you advise us whether you would be able to make affidavit swearing to this fact, also whether you have in your possession any sketches that you made of the device prior to that date and whether the model which we returned to you a short time ago was made before the date mentioned."

To this letter Doulett replied October 21, 1914:

"Robb & Robb—Gentlemen: In reply to yours of the 16th inst., will say that my device was invented between December 15 and 25, 1913, and was in use at factory the latter part of February, 1914. I have the first model made in December, 1913, which had a contracted portion above the setting shoulder, and device was used until it became damaged; new one being made without contracted portion above setting shoulder. The model which you returned was made and tried out March 1, 1914. As regards to contracted portion above the setting shoulder of my device, it was left out when last model was made, as it was doing the work well without it, but can see now where I have made an error in doing so, as the Glines patent put a claim on it. My idea for grinding above the setting shoulder of device, was to help to support uppermost flap of leather or material, to give the eyelet more chance to turn outward."

It appeared from the letter of Doulett's solicitors, to which this was a reply, that they had sent him the Glines patent, granted September 8, 1914, in which the contracted portion above the setting shoulder was set out in the claims.

It was also in evidence that he had seen the device of the plaintiff before he wrote this letter and that a patent had been issued to the plaintiff. It appeared from his letter that, if he had made a device with a contracted portion above the upsetting shoulder, he did not consider it of importance as it did the work well without it. When his second application was made his attention had been called by the Glines patent and that of the plaintiff, to the important feature of this contracted portion above the upsetting shoulder and he included it in the claim filed with this application.

The reason given by Doulett for not making a model which contained this feature, to send to his patent solicitors, is not convincing and seems absurd. He claimed that he sent a model that did not have a restricted portion behind the upsetting shoulder because he thought the model looked better without it. When asked upon cross-examination why he did not include the feature of the restricted portion or recess in the model which was sent to his patent solicitors he testified as follows:

"X-Q. You did not want to get a patent on a recess at that time, did you? A. Not on that particular set; no.
"X-Q. You did not want to get a patent on a recess at that time did you? A. I did not need it for that particular set.
"X-Q. You did not want to get a patent upon a recess at that time, did you? A. I have got to repeat the same answer: I did not need it."

When directed by the court to answer yes or no, he answered: "No; it was not necessary."

A letter from the superintendent of the Middleboro factory of Leonard & Barrows to the superintendent of their factory at Belfast, Me., was introduced in evidence. It was written in May, 1914, and referred to eyelet sets which had been sent to the Belfast factory a short time before, and the superintendent of the Belfast factory was asked to have a thorough test made of these sets, because they were waiting at Middleboro to know the result before any more would be manufactured there. Later the eyeletting sets that had been sent to Belfast were recalled. One of them was found and introduced in evidence. This has no restricted portion above the setting shoulder.

A Mr. Jewett, who was a machinist in the stitching room of the Leonard & Barrows factory at Belfast in the spring of 1914, testified that there was trouble in the use of the Doulett set at that factory, because the outer layer of leather adhered to the punch and was caught in the prongs of the barrel of the eyelet; that to remedy this difficulty he filed the part above the upsetting shoulder to make it smaller.

[7] We do not think it necessary to discuss in detail the great mass of testimony which was taken. It is enough to say that the testimony was conflicting, and that the learned judge who sat in the District Court, having the opportunity of observing the appearance of the witnesses, which he states constituted an unusually important fact in arriving at his conclusion, states his conclusion as follows:

"The conclusion I reach on all the evidence, including as an unusually important part the appearance of the witnesses, makes it unnecessary to consider whether this is a case in which priority of invention must be proved beyond a reasonable doubt,—at least by clear and convincing testimony.

"For to repeat, I find that the evidence shows beyond any fair and reasonable doubt that Doulett was not the prior inventor of the invention covered by the plaintiff's patent."

[8] It is evident from this statement that the trial judge had reached that degree of conviction as to the issue of priority which could fairly be characterized as falling within the rule laid down in Morgan v. Daniels, and we are of opinion that we should follow the familiar rule that findings of fact by the trial judge are not to be reversed, unless clearly wrong.

We have, however, carefully examined the whole record, and, after giving due weight to the decisions of the Patent Office and the Court of Appeals, we think the evidence is clear and convincing that Doulett had not invented any invisible eyeletting tool with a contracted portion above the upsetting shoulder before the plaintiff's application was filed in the Patent Office.

The decree of the District Court is affirmed, with costs to the appellee.