## O'DONNELL v. UNITED SHOE MACHIN- ERY CORPORATION et al.
### No. 3549.

District Court, D. Massachusetts.
Jan. 19, 1933.

Charles D. Woodberry and Roberts, Cushman & Woodberry, all of Boston, Mass., and Murray & Zugelter, of Cincinnati, Ohio, for plaintiff.

Fish, Richardson & Neave, of Boston, Mass., Harrison F. Lyman and Hector M. Holmes, both of Boston, Mass., for defendants Geo. E. Williamson & United Shoe Machinery Corporation.

BREWSTER, District Judge.

In this suit in equity, brought under R. S. § 4915 (35 USCA § 63), plaintiff seeks to establish his rights to letters patent which were denied to him by the Commissioner of Patents.

### Statement of Facts.

1. The subject-matter involved relates to the shoe art, and especially to the re-enforcing and finishing edges of ladies' shoes. In the manufacture of shoes a strip, or margin, is sewed along the edges of the shoe part, a coating of cement applied to the margin, and then the margin is folded over on the edge of the shoe part. There had already been developed in the art a binding which carried over a portion of it a so-called thermo plastic adhesive which was not sticky when cold, but which would adhere when heat was applied to it. The problem presented to the inventor was to provide means of applying heat during the folding process, so that such heat plastic binding could, with speed and cleanliness, be folded upon the main body portion of the work.

2. The plaintiff's application, filed May 15, 1929, related to alleged "new and useful improvements in a device for using heat plastic binder tape with rotary folders," according to his specifications. The invention had "for its principal object the provision of simple means for use with rotary folders so as to adapt them to the use of heat plastic adhesive tape." The means disclosed, without attempting the intricacies of the device, consisted in forcing a blast of hot air directly upon the heat plastic binding just as the binding passed through the folding operation. The claims covered both methods and machines for thus applying heat to the heat plastic tape.

3. The defendant Williamson, on March 7, 1928, filed an application for letters patent

covering methods and machines for applying heat or other softening agents to the adhesive binding as it was folded and pressed upon the body portion of the work. According to the disclosures in this application, heat is applied directly to both the plastic coated margin and the material upon which it is to be folded. This application of heat is accomplished by electrically heating certain parts of the folding mechanism which come in contact with the material as it passes through the folding machine. In his application Williamson stated: "By thus applying heat to the work through a member which extends into the angle between the bent-up margin and the body portion of the work, both the coating of cement upon the margin and the surface against which the margin is to be pressed may be warmed and a firm bond obtained."

3. The Commissioner of Patents declared an interference between Williamson's and the plaintiff's applications upon seven counts, of which six were based upon claims in the Williamson application, and the seventh based upon one of plaintiff's claims.

Counts 3 and 4 are sufficiently illustrative.

"Count 3. The method of treating a piece of sheet material which comprises attaching to the margin of the material a binding strip adapted to be folded over upon a face of the sheet material, said strip having upon part or all of one side thereof a coating of cement which is normally not sticky but may be rendered sticky by the application of heat, progressively bending the strip about the edge of the sheet material to form a fold, applying heat directly to that face of the sheet material against which the strip is to be pressed, and progressively pressing the folded strip upon the margin of the sheet material.

"Count 4. A machine for operating upon a piece of work, which is provided along its margin with a band of cement adapted to be rendered sticky by the application of heat, having in combination a support for the work, means for progressively bending the margin to form a fold, means for applying heat directly to that side of the bent margin which carries the cement, and means for progressively pressing the bent margin upon the body portion of the work."

4. In the interference proceedings the only issue was priority of invention. Testimony was taken by plaintiff tending to establish the date of the conception and reduction to practice of his invention. The defendant, relying on the date of his application, took no testimony, and only offered in evidence prior patents for the purpose of showing the pat-

ented prior art. In rebuttal, the plaintiff sought to show that Williamson's methods and machines were not patentable for want of utility, but the Patent Office refused to consider the evidence as well as a motion, filed too late, to dismiss the interference on similar grounds. The Examiner of Interference, the Commissioner of Patents, and the Board of Appeal concurred in the conclusion that the plaintiff had not established conception prior to March 7, 1928, of a method or device for applying heat *directly* to heat plastic binding while being folded. Consequently, priority was awarded to Williamson, and on March 22, 1932, letters patent No. 1,850,-979 were granted to Williamson, assignor of the defendant United Shoe Machinery Corporation, covering 22 claims, including the 7 claims of the interference.

5. Plaintiff's evidence, at the hearing in this court, included the records of the interference which included depositions of plaintiff and his witnesses; depositions taken in another interference proceeding to which the plaintiff was a party, which depositions were by stipulation to be received as evidence in the instant case, so far as material; depositions taken for use in the trial here; and testimony in court of plaintiff and another witness in his behalf. Thus the evidence adduced at the hearing upon the issue of priority was not the same as that presented by plaintiff in the interference proceedings. Some of plaintiff's witnesses, whose testimony was before the Patent Office, gave later depositions for use in this case, and there were also additional witnesses whose testimony, so far as has appeared, was available at the time of the interference proceedings.

6. None of the witnesses testified to the completion or demonstration prior to March 7, 1928, of any device for forcing a blast of heated air directly upon the binding that was adapted for use on folding machines. They are not in full agreement as to the date when such a device was first demonstrated as a practical and efficient means of softening the adhesive substance on French binding by the hot air method directly applied. Some of the witnesses put the date somewhat later than March, 1928, and, so far as correspondence may be resorted to as an aid in fixing the time of the first practical demonstration, it tends to establish the later time. Some of the witnesses who have given their testimony on more than one occasion have revised their statements in respect to this date. On this issue the plaintiff offers the evidence of witnesses, many of them interested in the outcome, who are relying upon their memory

180

without the aid of any record or document which would enable them to fix, with any degree of certainty or definiteness, the date of plaintiff's reduction to practice.

Hospital records were produced to show when one witness was a patient in a hospital. Time cards were also admitted, showing when this witness entered the employ of the plaintiff's company and when another witness left that employ. But whether such demonstrations took place and when they occurred still depends on the accuracy of the memory of the witnesses who are not altogether in full accord. Discrepancies are found between the testimony of the same witness, given at different times, as well as between testimony of the several witnesses.

The evidence warrants, however, a finding that by the last of May, or early in June, plaintiff had developed and assembled his first device that was capable of being used in connection with the folding process, and that some time later in the summer the device was installed in a shoe manufacturing plant. It was not until February, 1929, that the plaintiff first took steps to have his invention patented.

7. The plaintiff contends, however, that prior to March 7, 1928, he had conceived the idea of directing upon the coated margin a blast of hot air, and had, as early as January, 1928, disclosed the idea to his employees and relatives by heating a tube and blowing the heated air directly upon heat plastic binding while it was in the process of being folded over on the main body of the work. To prove this earlier conception, the testimony of the plaintiff, his brother, his sister, and an employee of and a director in plaintiff's company is offered. They were all, with one exception, witnesses in the interference proceeding, and neither the plaintiff nor any of these witnesses testified to any such demonstration taking place in January, 1928.

8. The Examiner of Interferences found with respect to counts 1 to 6, originating in Williamson's application, that these counts "contain the limitation that the heat or 'softening agent' is to be applied directly to the cement which is to be softened. In accordance with the well-settled practice, every limitation appearing in the counts must be regarded as material (Bijur v. Rushmore, 1918 C. D. 122, 246 O. G. 301 and authorities there cited). In the present case, moreover, it clearly appears that the direct application of the heat was the feature relied on to distinguish counts 1–6 from the prior art, which showed the application of heat to the side of the binding opposite to that on which the cement was placed. Under these circumstances, it is evident that no process or apparatus can be considered as satisfying counts 1–6 unless it involves the direct application of heat to the cement."

This limitation upon the scope of the claims was fully warranted in view of Ridderstrom, No. 1,694,796, Byron et al., No. 1,618,809, and MacDonald, No. 1,661,571.

9. The seventh count, which does not include the limitation above noted, defines the process in which the material is "passed through a folding machine." This count was properly construed by the Examiner as limited to a process involving the use of folding means, as distinguished from one in which the folding is performed by hand. It is reasonably clear from the evidence that no method or machine had been adopted which came within the scope of this count prior to the conception date of Williamson.

10. It also appeared from the evidence that, prior to the plaintiff's alleged experiments with hot air, he had devised a heating unit to be used in connection with a folding machine, known as the "duck's beak." This device proved unsatisfactory, and was abandoned as a futile experiment. No attempt was made to secure a patent upon it. Moreover, inasmuch as it involved indirect application of heat, it is clear that it did not involve patentable novelty in view of the prior patented art.

11. On the question of the utility of Williamson's machine, these facts are established by the evidence. A device was perfected which was attached to a model G folding machine, made by the defendant corporation, and was first tried out in a shoe factory in Brockton, where it satisfactorily accomplished the purposes for which it was intended. The next experiment, as far as the evidence discloses, was in the plant of G. Edwin Smith Company at Columbus, Ohio, in March, 1928. There was only one short demonstration there which did not produce satisfactory results. The reason assigned by the operator was that the binding which was used was such as to render it difficult to perform the folding operation with the Williamson device attached. There was a demonstration of the operativeness of the machine during the trial in this court, when thermo plastic tape was folded on to shoe parts. The results are in evidence together with the testimony of the defendants' witness that the resultant product would commercially pass as satisfactory. An examination of the exhibits would seem to bear out the testimony of the defendant on this ques-

tion. It appeared, however, that only one folding machine had been equipped with the Williamson device, and that the defendant corporation had never made any attempt to introduce the device into the shoe trade; the reason assigned being that shoe manufacturers had found it more economical to use a folding machine which was equipped with mechanism for the application of wet cement.

### Conclusions of Law.

█ We have here to deal with a case where all the officials in the Patent Office, including the Board of Appeals, have concurred in finding as a fact that Williamson was the first inventor of the method and machine disclosed in plaintiff's application. That this finding of fact creates a presumption in favor of Williamson's priority difficult to overcome is well settled. Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657; Hernandez v. Prizma, Inc. (D. C.) 39 F.(2d) 196; United Shoe Machinery Corp. v. Muther (C. C. A.) 288 F. 283.

█ The presumption still obtains in cases where the evidence before the court is not the same as that before the Patent Office, and "is not to be overthrown unless under the language of Morgan v. Daniels, there was testimony which 'in character and amount carries thorough conviction.'" United Shoe Machinery Corp. v. Muther, supra, at page 289 of 288 F.

The first question, therefore, is whether the renewed, revised, and augmented testimony relating to priority is of such quality and quantity as to carry a thorough conviction that the patent tribunal erred in finding that Williamson was the first inventor. This involves weighing the testimony by which plaintiff seeks to establish a conception and demonstration in January, 1928. Five witnesses, including the plaintiff, testified that such a demonstration took place soon after the first week in January. None of these witnesses attempted to fix the exact date, and all rely upon his or her memory without the aid of any documentary evidence.

Hospital records and time cards have no value as corroborative proof of definite dates of conversations and demonstrations which may, or may not, have taken place before, after, or during the period of employment or of hospitalization.

None of these witnesses can be said to be disinterested. All but one gave their depositions in the interference proceeding, and none of these made any mention of any such experiment. In fact, in the earlier proceeding, plaintiff had testified that he had embodied his invention in a practical machine some time in January, 1928. This testimony he now admits was not true. It follows that his preliminary statement, to the effect that he conceived and reduced to practice his invention in 1927, was even wider of the mark. All of the additional testimony was available when the question of priority was before the Patent Office. Defendant contends that it should not now be considered in this trial. Barrett Co. v. Koppers Co. (C. C. A.) 22 F.(2d) 395, 397, Perkins v. Lawrence Sperry Aircraft Co. Inc. (D. C.) 57 F.(2d) 719, Greene v. Beidler (C. C. A.) 58 F.(2d) 207.

█ I am not inclined to sanction the practice of submitting issues of fact to an administrative department, competent to decide the issue, upon a partial presentation of the available evidence, reserving the full presentation for a trial in the courts to set aside the order of the administrative authority. This practice was justly condemned in Barrett Co. v. Koppers Co., supra, in the following language:

"If for some reason of his own a party withhold evidence which is available to him and which he can produce at will but does not produce, then he must be regarded as having abandoned that evidence in its bearing on the issue under trial. When that issue is decided it is somewhat in the nature of res judicata as to the evidence withheld.

"The law gave the plaintiffs a day in court on the issue of priority. That was the day the interference was heard and if they chose not to avail themselves of their full rights but to gamble on the decision by giving only a part, and the weaker part, of the evidence they had in hand, they did it at their own risk."

█ However, I will add that, with the additional evidence before me, I entertain substantial doubts respecting the date of the first conception, and this without imputing any deliberate intention to mislead. It is only natural after the lapse of time that one's memory of events, not at the time thought to be important, should be somewhat unreliable, and that recollections should be to some degree affected by one's interest in the result of the litigation. The plaintiff's memory as to important events on his own admission was not altogether dependable.

If anticipation may not be established by memory testimony alone [Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153; Brown v. Zaubitz (C. C.) 105 F. 245; A. B. Dick Co. v. Simplicator Corp. (C. C. A.) 34 F.(2d) 935; Nilson v.

Ford Motor Co. (D. C.) 38 F.(2d) 1001] a fortiori, such evidence would be inadequate in a proceeding under R. S. § 4915, to overturn the considered finding of administrative officials.

There is another phase of the case which creates a reasonable doubt concerning plaintiff's right to an award of priority, and that is whether there had been such a sufficient reduction to practice prior to March 7, 1928, of plaintiff's method and machine as to establish his claim as the first inventor. Use of the binding tape coated with thermo plastic cement was old. The use of heat as a softening agent was also covered in the patented art. The idea of the application of hot air by directing a blast upon the work was suggested to the plaintiff. It was not original with him. This suggestion would amount to a contribution to the art only when some practical method had been worked out and substantially embodied in mechanical means for successfully carrying the idea into effect.

It was said by Judge Story in Reed v. Cutter, 1 Story, 590, 599, Fed. Cas. No. 11,645: "In a race of diligence between two independent inventors, he, who first reduces his invention to a fixed, positive, and practical form, would seem to be entitled to a priority. * * * "

See, also, Agawam Woolen Co. v. Jordan, 7 Wall. 583, 602, 19 L. Ed. 177, Deering v. Winona Harvester Works, supra, Telephone Cases, 126 U. S. 1, 567, 8 S. Ct. 778, 31 L. Ed. 863.

In the Agawam Case, page 602 of 7 Wall., 19 L. Ed. 177, the settled rule of law is stated to be "that whoever first perfects a machine is entitled to the patent, and is the real inventor, although others may have previously had the idea and made some experiments towards putting it in practice. He is the inventor and is entitled to the patent who first brought the machine to perfection and made it capable of useful operation."

Taking the view of the evidence most favorable to the plaintiff, his efforts did not reach that stage until after Williamson had entered the field with his application.

The defense of inoperativeness is without merit. It is only necessary that the invention should perform the functions for which it was intended. The fact that it performs these functions imperfectly, or failed to do as good work as improved machines might do, does not afford grounds for declaring the patent void for want of utility. Tel-

ephone Cases, supra, page 535 of 126 U. S., 8 S. Ct. 778; Gibbs v. Hoefner (C. C.) 19 F. 323; Von Schmidt v. Bowers (C. C. A.) 80 F. 121; Thayer & Chandler v. Wold (C. C.) 142 F. 776; Engineer Co. v. Hotel Astor (D. C.) 226 F. 779; Electro-Dynamic Co. v. U. S. Light & Heat Corp. (C. C. A.) 278 F. 80; Remington Cash Register Co. v. National Cash Register Co. (D. C.) 6 F.(2d) 585, 630; Western Willite Co. v. Trinidad Asphalt Mfg. Co. (C. C. A.) 16 F.(2d) 446.

Nor is the plaintiff helped by the fact that the defendant Shoe Machinery Corporation took no steps to exploit or introduce into the shoe trade the Williamson patented device. Hammond v. Benzer Corp. (C. C. A.) 6 F.(2d) 760; Cleveland Automatic Mach. Co. v. National Acme Co. (C. C. A.) 52 F. (2d) 769, 771; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 424, 28 S. Ct. 748, 52 L. Ed. 1122; Woodbridge v. United States, 263 U. S. 50, 55, 44 S. Ct. 45, 68 L. Ed. 159.

Plaintiff's bill may be dismissed.